Filed 7/30/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NEW COMMUNE DTLA LLC, | B337897 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCP00426) |
| v. | |
| CITY OF REDONDO BEACH et al., | |
| Defendants and Respondents. | |

APPEAL from judgment of the Superior Court of Los Angeles County, James Chalfant, Judge.  Affirmed.

Patterson & O'Neill, Ryan Patterson and Brian O'Neill, for Plaintiff and Appellant.

Joy A. Ford, City Attorney; Richards, Watson & Gershon and Ginetta L. Giovinco for Defendants and Respondents.

In this appeal, we address two statutory schemes that promote state policies over the interests of local governments: the Housing Accountability Act (HAA) (Gov. Code, § 65589.5) and the California Coastal Act (Coastal Act) (Pub. Resources Code, § 30000 et seq.).[1]  The HAA seeks to increase affordable housing throughout the state.  The Coastal Act aims to protect the California coast.  A statewide agency implements each act.  The California Department of Housing and Community Development (HCD) reviews and certifies local housing elements, and the California Coastal Commission (Commission) reviews and certifies local coastal programs (LCPs).  A locality's housing element and LCP shape development of real estate within its boundaries.

New Commune DTLA, LLC (Developer) applied to the City of Redondo Beach and its Department of Community Development and City Council (collectively City), for permits to develop 30 condominium units, six of which would serve as affordable housing, in the City's coastal zone.  Following the denial of its application, Developer petitioned for writ of mandate compelling the City to approve its application under the builder's remedy provisions of the HAA.  The trial court denied the petition, finding Developer's proposed project violated the City's LCP.  The LCP, as certified by the Commission, designated the zone in which Developer sought to build residences only for public access, coastal recreational facilities, and services supporting boating and fishing.

Developer contends the trial court erred by effectively overriding the HAA in favor of the Coastal Act and offers a

---

[1]    Unless otherwise indicated, unspecified references to statutes are to the Public Resources Code.

2

proposal for "harmonizing" the two acts.  We decline Developer's requested construction, which would impose on local governments the duty to determine whether new and Commission-uncertified land uses comply with the Coastal Act.  Instead, we assume the HAA's builder's remedy applies in this appeal.  One of its provisions, Government Code section 65589.5, subdivision (d)(3), compels us to consider whether (1) the City's denial was required under the Coastal Act as a matter of state law; and (2) no feasible method existed for the proposed housing to be compliant.  This approach accords deference to the HAA while upholding Coastal Act requirements and necessary Commission oversight of coastal land uses.  We uphold the City's denial and affirm the judgment.

## BACKGROUND

### A.    The Coastal Act

The Coastal Act governs coastal development.  It created the current Commission to oversee "'the orderly process of planning for the future development'" of the coastline.  (*Shear Development Co., LLC v. California Coastal Com.* (2026) 19 Cal.5th 334, 344 (*Shear Development*).)  Its chapters include general declarations and definitions (Chapters 1–2; §§ 30000–30122) and address planning and management (Chapter 3; §§ 30200–30270); creation and powers of the Commission (Chapters 4–5; §§ 30300–30421); implementation and development (Chapters 6–7; §§ 30500–30627); ports (Chapter 8; §§ 30700–30721); and judicial review, penalties, and severability (Chapters 9–10; §§ 30800–30900).  These provisions must be liberally construed.  (§ 30009; *Pacific Palisades Bowl Mobile*

*Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793–794 (*Pacific Palisades*).)

The Coastal Act's primary goals include protecting the coastal zone, conserving its resources, maximizing public access to the coast and recreational opportunities for the public, and promoting conservation principles and the constitutional rights of private property owners. (§ 30001.5, subds. (a)–(c).) Chapter 3 prescribes more than 40 additional policies (hereinafter Chapter 3 policies) concerning public access and recreation (§§ 30210–30224), protection of the marine environment (§§ 30230–30244), and prioritization of private land uses for public-serving recreational facilities over private residential development. (See §§ 30221, 30222; see also §§ 30210–30214, 30220, 30223–30265.5.)

As expressly stated in the Coastal Act, the Commission and local governments "share responsibility for planning coastal development." (*Shear Development*, *supra*, 19 Cal.5th at p. 344.) Local governments with coastal land must submit an LCP to the Commission for certification. (§ 30500, subd. (a).) An LCP must include a land use plan—the functional equivalent of a general plan for property in the coastal zone. The LCP must also include a local implementation plan that includes zoning, zoning maps, and other implementing actions for the coastal zone. (§§ 30108.5, 30108.6.) The Chapter 3 policies "constitute the standards by which" the Commission determines LCP adequacy. (§ 30200.)

Once the Commission certifies an LCP, the local government is statutorily delegated "issuing authority" over coastal development permits (CDPs) that are required for coastal development. (§ 30519, subd. (a).) This authority is limited. The local government "shall" issue a CDP only if the proposed

4

development conforms to its certified LCP. (§§ 30600, 30600.5, subd. (c), 30604, subd. (b).) To authorize any use of coastal land other than that designated in its certified LCP, the local government must obtain Commission approval through an amendment process. (§ 30514, subd. (e).)

The Coastal Act also reserves power in "the requirements of state and federal law with respect to providing low- and moderate-income housing, . . . or any other obligation related to housing imposed by existing law or any law hereafter enacted." (§ 30007.) This provision preserves some authority in those other statutory schemes and is to be strictly construed. (See *City of Dana Point v. California Coastal Com.* (2013) 217 Cal.App.4th 170, 195; *Howard Jarvis Taxpayers Assn. v. County of Orange* (2003) 110 Cal.App.4th 1375, 1384.)

## B.    The City's Certified LCP

It is undisputed that the City had a Commission-certified LCP at all relevant times in this case. (See Redondo Beach Mun. Code, §§ 10-5.102, 10-5.200(b), 10-5.201(a)–(b), 10-5.2210(a).) The LCP designates permitted uses for different coastal zones. The City's Coastal Commercial-4 (CC-4) zone is restricted to public access uses, coastal-related commercial-recreational facilities, and service facilities supporting pedestrian-oriented recreational boating and fishing. (See *id.*, §§ 10-5.101, 10-5.800, 10-5.810, 10-5.815, 10-5.2600; see also *id.*, § 10-5.102].) Residential uses are neither permitted nor conditionally permitted in this zone. (See *id.*, § 10-5.202(a).)[2]

---

[2]    The City's portion of the coastal zone is divided into six zoning districts: residential; commercial; mixed used; public and institutional; industrial; and overlay. (See Redondo Beach Mun. Code, §§ 10-5.101,

The City's coastal land use implementing ordinances prescribe mandatory amendment procedures to change any portion of its coastal zoning regulations or map. (See Redondo Beach Mun. Code, §§ 10-5.2504–10-5.2505.) These procedures require public notice, at least one hearing, and if necessary, an administrative appeal prior to adopting any change. (*Ibid.*) No change can "take effect until it has been submitted to and reviewed and certified by the . . . Commission . . . for consistency with the City's certified [LCP]." (*Ibid.*)

## C. Developer's Application

In July 2022, Developer applied to the City for permission to build a 141,000 square foot mixed-use project, consisting mainly of 30 condominiums, six of which would serve as affordable housing. Throughout its application, Developer acknowledged residential uses were not permitted but declared its application must be approved as a "builder's remedy" project under the HAA.

## D. The Housing Element Law, HAA, and Builder's Remedy

Like other local governments, the City must adopt comprehensive, long-term plans for development within its jurisdiction. (See *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 444.) Under the Housing

---

10-5.201(i), 10-5.300.) The CC-4 zone designates limited retail, snack shops, parks and recreation, and open space as permitted uses; and designates commercial, recreation, school, and other public facilities as conditionally permitted uses.

Element Law (Gov. Code, §§ 65580–65588), the City's general plan must contain a variety of "housing elements" to address its regional housing needs. (See Gov. Code, §§ 65580, 65582.)

Among other requirements existing at the time Developer submitted its project for approval, its housing element had to address the identification, assessment, and analysis of existing and projected housing needs, as well as a program setting forth a schedule of actions to achieve housing element objectives through land use and development controls. (Former Gov. Code, § 65583, subds. (a), (c)(1), as amended by Stats. 2021, Ch. 358, §§ 1.5, 5.)

When a local government fails to obtain an HCD-certified housing element in a timely fashion, the HAA severely constrains its ability to reject any builder's remedy project that proposes affordable housing, even if that project conflicts with local zoning and general plan standards. (See Gov. Code, § 65589.5, subds. (a)–(d); *Kalnel Gardens, LLC v. City of Los Angeles* (2016) 3 Cal.App.5th 927, 938–939.)[3] During this period of HAA noncompliance, the local government may not disapprove such project without making specific written findings. These findings include, in relevant part, that "denial of the housing development project or imposition of conditions is required in order to comply with specific state or federal law, and there is no feasible method to comply without rendering the development unaffordable to low- and moderate-income households . . . ." (Gov. Code,

---

[3]     The parties dispute the operative versions of the HAA in this case. Unlike the operative version of the Housing Element Law, the current version of the HAA applies to this dispute. (See Gov. Code, § 65589.5, subd. (f)(7)(A) [builder's remedy proponent may proceed under current provisions of Gov. Code, § 65589.5 if its project application is submitted before January 1, 2025].)

7

§ 65589.5, subd. (d)(3).)  Nothing in this provision or the HAA "shall be construed to relieve" a local government from complying with the Coastal Act.  (*Id.*, § 65589.5, subd. (e).)

## E.    Application Denial and Underlying Proceedings

The City did not have a substantially compliant housing element certified by HCD at the time Developer submitted its project for approval.  (See *New Commune DTLA LLC v. City of Redondo Beach* (2025) 115 Cal.App.5th 111, 126.)  The project, which includes six units of affordable housing, thus constitutes a "'builder's remedy'" project.  (See Gov. Code, § 65589.5, subd. (h)(11).)  Two months after HCD certified its housing element in September 2022, the City notified Developer it was not processing its project application because it proposed unpermitted uses under the City's certified LCP.  The notice informed Developer that if it "wish[ed] to develop residential uses on this site," it could submit an application(s) for a general plan amendment, LCP land use plan amendment, or zoning amendment.  (Redondo Beach Mun. Code, §§ 10-2.2505, 10-5.204, 10-5.2505.)

Following an unsuccessful administrative appeal, Developer filed a verified petition for writ of mandate compelling the approval of its application under the HAA and requesting a declaration finding the City's decision unlawful.  The court denied the petition following a bench trial.  Despite finding the HAA builder's remedy provisions applicable to the dispute, the court found those provisions could not override coastal land development requirements under the Coastal Act and the City's certified LCP.

8

## DISCUSSION

Developer contends the trial court erred by prioritizing Coastal Act provisions over the HAA and offers its own proposal for "harmonizing" the two acts.

"We apply well-established principles to this question of statutory interpretation. ""When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. . . . If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.""""" (*Shear Development*, *supra*, 19 Cal.5th at p. 366.)

We address Developer's proposed harmonization of the HAA and Coastal Act first before analyzing the statutory schemes independently.

## A.    Developer's Proposed Harmonization

In Developer's view, the City's certified LCP contains local restrictions that can be unmoored from the Coastal Act. Because its project is a builder's remedy under Government Code section 65589.5, Developer argues these local restrictions cannot be used to override compulsory approval under the HAA.

9

As Developer admits, however, it and the City are bound by the Coastal Act. To accord significance to both statutory schemes, Developer argues the City's approval process for builder's remedy projects can be formulated by "harmonizing" various HAA and Coastal Act provisions. Under this proposed harmonization, the City must approve any builder's remedy project in the coastal zone unless it makes written findings that disapproval is necessary to comply with specific, objective resource protection policies prescribed by Chapter 3 of the Coastal Act.

The standard Developer proposes—compliance with "core," "specific," and "objective" Chapter 3 policies—is unworkable. Developer jettisons the majority of Chapter 3 policies in favor of six policies it avers "*could potentially* form" specific, objective policies on which disapprovals could be based.[4] At oral argument, developer could not identify which of these policies are truly "objective." Instead, it directed us to *California Renters Legal Advocacy & Education Fund v. City of San Mateo* (2021) 68 Cal.App.5th 820 (*California Renters*), which defines an "objective" policy as "'involving no personal or subjective judgment by a public official and being uniformly verifiable by reference to an external and uniform benchmark . . . .'" (*Id.* at p. 840, quoting Gov. Code, § 65589.5, former subd. (h)(8).)

Under this standard, almost all the policies Developer identifies as "potentially" objective are subjective. For example, one policy restricts areas adjacent to environmentally sensitive habitat areas and parks and recreation areas to uses that are

_____

[4] The City persuasively argues Developer's proposal would lead to "cherry-picking" particular Coastal Act policies while reading others "out of existence."

10

"*compatible* with the continuance of those habitat and recreation areas." (§ 30240, subd. (b), italics added.) This policy, like the others identified by Developer, lacks "specificity" and "requires interpretation and subjective judgment." (*California Renters*, *supra*, 68 Cal.App.5th at p. 842.)[5] Developer identifies no external and uniform benchmark to verify uses that are compatible with coastal habitat and recreation areas. Indeed, this type of interpretation and judgment is expressly delegated to the *Commission* whose "primary responsibility" is implementing the Coastal Act's provisions. (§ 30330; see § 30200, subd. (a).) We discern nothing in the Coastal Act delegating that responsibility (or expertise) to a local government driven by its own interests. We may not, under the guise of construction, delegate or impose upon local governments the responsibility to determine whether "specific, objective" Coastal Act policies would be served by projects proposed in their jurisdictions. (See *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992.)

Instead, we assume without deciding the builder's remedy applies in this case and analyze whether, under the builder's

---

[5] Other policies identified by Developer require the same interpretation and judgment. (See §§ 30241, subd. (b) [limiting conversion of agricultural land around the periphery of urban areas "where the viability of existing agricultural use is already severely limited . . . or where the conversion of the lands would complete a logical and viable neighborhood and contribute to the establishment of a stable limit to urban development"], 30234 [limiting commercial fishing and recreational boating harbor space "unless the demand for those facilities no longer exists or adequate substitute space has been provided"], 30243 [limiting conversion of coastal commercial timberlands in units of commercial size to "providing for necessary timber processing and related facilities"].)

11

remedy provisions, specifically Government Code section 65589.5, subdivision (d)(3), denial of Developer's builder's remedy project is necessary to comply with the Coastal Act. We review the relevant facts for substantial evidence and the City's ultimate decision denying the project for abuse of discretion. (Code Civ. Proc., §1094.5, subd. (b); see *Wall v. California Coastal Com.* (2021) 72 Cal.App.5th 943, 951 (*Wall*); *Reddell v. California Coastal Com.* (2009) 180 Cal.App.4th 956, 962.)

**B. Application of Government Code Section 65589.5**

Government Code section 65589.5, subdivisions (d)(1) through (d)(5) place conditions on disapproving a builder's remedy project. Under subdivision (d)(3), the City may not disapprove such a project absent written findings supported by the preponderance of the evidence that (1) disapproval was required under state law; and (2) no feasible method existed to comply with state law without rendering the proposed development unaffordable. As we shall discuss, the City determined disapproval was required by the Coastal Act and no feasible method was shown to comply with it.

1. *The Coastal Act Required the City's Disapproval*
    a. *The Certified LCP Embodies Coastal Act Policies and Law*

Contrary to Developer's construction, the City's certified LCP does not solely embody local standards. The LCP was devised and coordinated with Commission input as required by the Coastal Act. (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 922 (*McAllister*).) When reviewing the City's LCP, the Commission had to determine whether the

12

"kinds, location, and intensity of land uses" in its land use plan conformed with Chapter 3 policies.  (§§ 30108.5, 30512, subds. (a)(1), (c), 30512.2, subds. (a), (b).)  Such review also required the Commission's encouragement of affordable housing and "the provision of new affordable housing opportunities . . . in the coastal zone."  (§ 30604, subd. (g).)

Following its certification of the City's LCP land use plan, the Commission was required to determine whether the kinds of uses, locations, and intensities in the land use plan were adequately carried out by the City's zoning ordinances, maps, and other implementing actions.  (§§ 30512, subd. (a)(1), 30513, subd. (b); see also § 30516, subd. (a)).  The Commission's certification confirms these findings and Coastal Act conformity.  (See *McAllister*, *supra*, 169 Cal.App.4th at pp. 922–923; *Santa Barbara County Flower & Nursery Growers Assn. v. County of Santa Barbara* (2004) 121 Cal.App.4th 864, 871–872; see also §§ 30510–30526.)

The substance of these procedures and the Commission's involvement in them reflect a "'fundamental'" Coastal Act purpose to "'ensure that state policies prevail over the concerns of local government.'"  (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 794; see also *City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472, 489 ["Surely the Legislature did not go to all this trouble to create a statewide rubber stamp agency which does no more than review local legislation for arbitrary and capricious enactments"].)  As both local and state governments "engage[d] in extensive work to draft, edit, and enforce" the City's LCP under Coastal Act direction, the actions of both are "sufficiently comparable to authorship."  (*Shear Development*, *supra*, 19 Cal.5th at p. 354.)  Thus, the City's certified LCP embody policies

that are "'not solely a matter of local law, but embody state policy.'" (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 794, quoting *Charles A. Pratt Construction Co., Inc. v. California Coastal Com.* (2008) 162 Cal.App.4th 1068, 1075; see *Shear Development*, at p. 343 ["An LCP is enacted law"].)

    b. *The City's Issuing Authority is Limited to LCP-Certified Uses or a Commission-Certified Amendment*

  Upon LCP certification, the Coastal Act delegated the City "issuing" authority over CDP applications in its jurisdiction. (*Pacific Palisades*, *supra*, 55 Cal.4th at p. 794; see *Wall*, *supra*, 72 Cal.App.5th at p. 949; see also §§ 30512–30513, 30519, subd. (a), 30600, subd. (a), 30600.5, subd. (b).)[6] This authority is expressly limited: the City must ("shall") issue CDPs for proposed coastal developments if the proposed projects are in "conformity" with its certified LCP. (§ 30604, subd. (b); see *Hanks v. State Board of Equalization* (1964) 229 Cal.App.2d 427, 434 ["The word 'conform' is commonly used as, and is defined [as] 'to bring into harmony or agreement'"]; see Black's Law Dict. (12th ed. 2024) p. 147 ["conforming" defined as "[b]eing in accordance with"].)

  Developer acknowledges this "shall issue" authority for LCP *conformity* but argues section 30604(b) does not require CDP disapprovals for LCP land use *nonconformity*. We are not persuaded.

  The Coastal Act does not grant local governments with Commission-certified LCPs the authority to approve unsanctioned uses of coastal land. The Coastal Act amendment

---

[6] None of the exceptions to the delegation of issuing authority apply in this case. (See §§ 30519, subd. (b), 30603.)

procedures, "similar procedures to those for reviewing a new LCP" (*Shear Development*, *supra*, 19 Cal.5th at p. 355), preclude this type of local approval. An "'amendment of a certified [LCP]'" is defined as "*any* action . . . that authorizes the *use* of a parcel of land other than a *use* that is designated in the certified [LCP] as a permitted *use* of the parcel." (§ 30514, subd. (e), italics added.)

The purpose of this amendment procedure is clear: Any land use not previously certified in an LCP must be submitted for Commission certification before it may be approved locally. Developer's proposed construction would defeat this manifest requirement and render various LCP certification, amendment, and CDP approval procedures ineffective. (See *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 ["Well-established canons of statutory construction preclude a construction which renders a part of a statute meaningless or inoperative"].)

Other Coastal Act provisions demonstrate the necessity for Commission approval of coastal land uses. One provision authorizes Commission review of "minor" amendments or those requiring "rapid" action. (§ 30514, subds. (c), (d)(1)(B).) This provision expressly precludes expedited review for "any change in land use or . . . allowable use of property." (See *ibid.*) Another provision governing affordable housing approvals prohibits the restriction of residential *densities*, provided residential *uses* are permitted in a certified LCP. (See § 30604, subd. (f) [absent finding density cannot be accommodated in a manner that conforms with certified LCP, government may not restrict densities below local zoning and the Density Bonus Law].)[7]

_____

[7] The Density Bonus Law (Gov. Code, § 65915) governs density bonuses and incentives. This law "shall not require or be interpreted"

15

As these provisions demonstrate, the City's ability to "authorize[ ] a use other than that designated in the LCP as a permitted use does require certification by the Commission (§ 30514, subd. (d))." (*Yost v. Thomas* (1984) 36 Cal.3d 561, 573, fn. 9.)  We conclude the City's disapproval was required under Government Code section 65589.5, subdivision (d)(3).

        c.       *Developer's Extratextual Evidence*

Developer relies on several cases and various Commission documents to demonstrate the City's ability to approve project applications notwithstanding LCP nonconformity.[8]  Developer overstates the impact of these authorities.

The cases on which Developer rely did not involve local approvals of uncertified land uses.  In *Hines v. California Coastal Com.* (2010) 186 Cal.App.4th 830 and *Alberstone v. California Coastal Com.* (2008) 169 Cal.App.4th 859, the courts upheld local CDP approvals that authorized projects in technical nonconformity with specific development *standards* because those nonconformities were overall compliant with LCP policies and the land *uses* at issue were permitted.  (See *Hines*, at

---

to require an LCP amendment and in no way may "supersede or in any way alter or lessen the effect or application" of the Coastal Act.  (See Assem. Conc. Sen. Amends. to Assem. Bill No. 2797 (2017–2018 Reg. Sess.) as amended Aug. 24, 2018, p. 2.)

[8]     Developer has requested judicial notice of documents marked as Exhibits A through I and K through O.  Despite citing an "Exhibit J," Developer's motion does not attach such document.  With the exception of this exhibit, we grant the motion.  (Evid. Code, § 452, subds. (c), (h).)  We deny the City's request for judicial notice of former Government Code sections 65589.5 and 65941.1.  (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.)

pp. 848–850 [reduced buffer width of single-family residence]; *Alberstone*, at pp. 864–867 [residential lot merger restrictions and requirements].) As these approvals applied to land already zoned for residential use, no Commission-certified land use designation change was required. (See also *Conway v. City of Imperial Beach* (1997) 52 Cal.App.4th 78, 89 [upholding modified residential density because "permitted uses of property in the coastal zone were not altered"].)

The Commission documents are similarly limited. Several documents recommend LCP amendments for Density Bonus Law modifications impacting "community character, visual resources, public views, sensitive biological resources . . . or public access to the coast." (See Cal. Coastal Com., Staff Recommendation on City of Carlsbad Major Amendment No. LCP-6-CAR-20-0078-2 (2022) pp. 1–3; Cal. Coastal Com., Staff Recommendation on San Luis Obispo County LCP Amendment No. LCP-3-SLO-21-0025-1-Part D (2021) p. 1.) These documents underscore the importance of Commission certification for even modifications compelled by state law if those modifications potentially impact Coastal Act policies. (See e.g., §§ 30250 [community character], 30251 [scenic and visual qualities], 30230 & 30240 [sensitive biological areas and resources], 30252 [public access].)

Other Commission documents recommend "no substantial issue" determinations, which the Commission may make to summarily dismiss a pending administrative appeal. (See §§ 30603, 30625, subds. (a), (b)(2).) Like the other authorities discussed, these administrative appeals challenged development standard conformity. (See Cal. Coastal Com., Combined Staff Report: Substantial Issue Determination Appeal No. A-3-MRA-24-0026 (2024) pp. 64–66, 83 [sensitive habitat standards, public

17

access, and recreational opportunities]; Cal. Coastal Com., Appeal Staff Rep.: Substantial Issue Determination Appeal No. A-2-HMB-16-0058 (2016) pp. 1–2 [visual compatibility with watershed character]). These appeals do support Commission approval of technical LCP nonconformities in light of additional, overriding LCP policies, but they do not support a city's approval of uncertified land uses.[9]

### d. *Conclusion*

Under Government Code section 65589.5, subdivision (d)(3), denial of a builder's remedy project may be required as a matter of state law. In this case, compliance with the Coastal Act required denial of a CDP permit for Developer's project. We recognize the friction in this conclusion and the HAA's laudable goal of providing affordable housing, but to adopt the construction proposed by Developer would effectively repeal Coastal Act procedures mandating Commission oversight. The

---

[9]     One report did address the question of nonconforming use but found the use permitted under the certified LCP. (Cal. Coastal Com., Appeal Staff Rep.: Substantial Issue Determination Appeal No. A-2-MAR-23-0050 (2024) pp. 1–2, 8–9, 13–14 [emergency affordable RV housing].)

The remaining Commission document is a 1979 memorandum from the Executive Director discussing local housing elements and housing components required for an LCP. While noting some similarities, the director cautioned that "adoption of a housing element does not automatically assure that the policies and programs of the housing element will meet the requirements of the Coastal Act. . . The reason for this is that there are two quite different standards established" in both legislative schemes. (Cal. Coastal Com., Exec. Dir. Memorandum on Use of Housing Elements Local Coastal Programs (1979) p. 1.)

Legislature may choose to curtail Coastal Act requirements after hearing from interested stakeholders beyond the parties before us. We may not rewrite the law as Developer requests.

2. *Feasible Method to Comply with State Law*

We turn now to the second inquiry under Government Code section 65589.5, subdivision (d)(3), and determine whether any feasible method existed to comply with the Coastal Act without rendering Developer's project unaffordable. "'Feasible'" is defined as "capable of being accomplished in a successful manner within a reasonable period of time, taking into account economic, environmental, social, and technological factors." (*Id.*, § 65589.5, subd. (h)(1).)

The record supports the City's infeasibility finding in this case. When notifying Developer its project sought unpermitted coastal land uses, the City informed Developer that its project was infeasible as a matter of law. The City's notice invited Developer to apply for a changed designation of land to residential use. (See § 30514; Redondo Beach Mun. Code, §§ 10-5.2504–10-5.2505.) Developer ignored this invitation. Absent any input from Developer, the City had no reason to determine, or a record from which it could determine, legal or economic feasibility.

Under these circumstances, we find guidance from California Environmental Quality Act (CEQA) cases addressing the very same statutory definition of "feasible" for program alternatives. (See *In re Bay-Delta etc.* (2008) 43 Cal.4th 1143, 1163; *Uphold Our Heritage v. Town of Woodside* (2007) 147 Cal.App.4th 587, 597–598 (*Woodside*) ["[u]nder CEQA 'feasible' is defined as 'capable of being accomplished in a successful manner

19

within a reasonable period of time, taking into account economic, environmental, social, and technological factors'"]; see also § 21061.1.) As these cases demonstrate, legally infeasible alternatives need not be fully analyzed because there is no discretion to approve them. (See *California Native Plant Society v. City of Santa Cruz* (2009) 177 Cal.App.4th 957, 981–982 (*Santa Cruz*) [agency needn't consider "infeasible" alternatives]; *Tiburon Open Space Committee v. County of Marin* (2022) 78 Cal.App.5th 700, 732; *Woodside*, *supra*, 147 Cal.App.4th at p. 602.)

Consistent with these decisions, the Coastal Act, and the undisputed fact of Developer's abstention from the City's proffered amendment process, we conclude that the City's feasibility review in this case was limited. Without Developer's participation in the amendment process or any resulting Commission approval or guidance, the City could not legally amend its certified LCP to allow residential uses in the CC-4 zone. Where such "alternative is infeasible," the City's decision cannot be "inadequate simply because it failed to include an analysis of that alternative." (*Sequoyah Hills Homeowners Assn. v. City of Oakland* (1993) 23 Cal.App.4th 704, 715, fn. 3; see also *Santa Cruz*, *supra*, 177 Cal.App.4th at p. 981 [project approval depends on whether "the alternatives are *actually* feasible"].)

In light of the foregoing, we discern no abuse of discretion in the City's decision disapproving Developer's builder's remedy development application under Government Code section 65589.5, subdivision (d)(3).[10]

---

[10] In light of this conclusion, we do not address the City's alternative argument that questions whether it "disapproved" the project application under the HAA.

20

**DISPOSITION**

The judgment is affirmed.  The parties shall bear their own costs on appeal.

MORI, Acting P. J.

We concur:

TAMZARIAN, J.

COGLIATI, J. **

---

**     Judge of the Santa Cruz County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.